**Tyrone James WHITE, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. A05–1169.**

Supreme Court of Minnesota.

March 23, 2006.

Tyrone J. White, Bayport, for Appellant.

Mike Hatch, Atty. Gen., Alan L. Mitchell, St. Louis County Atty., John E. De-Santo, Asst. St. Louis County Atty., for Respondent.

## OPINION

ANDERSON, PAUL H., Justice.

Petitioner Tyrone James White appeals the denial of his petition for postconviction relief, alleging six claims of error. We affirm the postconviction court's denial of White's petition.

On January 31, 2003, petitioner Tyrone White was convicted in Saint Louis County District Court of first-degree felony murder and attempted first-degree premeditated murder. Our opinion issued in response to White's direct appeal provides a comprehensive statement of the facts of this case. *State v. White*, 684 N.W.2d 500, 502–04 (Minn.2004). The district court sentenced White to life imprisonment for murder and a consecutive 180–month sentence for attempted murder. White appealed his convictions, arguing that (1) the court erred by denying his *Batson* objection to the state's peremptory challenge of a prospective juror; (2) Minnesota's accomplice liability statute, Minn.Stat. § 609.05 (2004), is unconstitutional; (3) the court erred in its instruction to the jury regarding accomplice liability; and (4) the evidence was insufficient to support the convictions. *White*, 684 N.W.2d at 502. We affirmed.

White subsequently filed this petition for postconviction relief, alleging that (1) the

district court erred in admitting uncorroborated accomplice testimony; (2) racial discrimination in the Saint Louis County grand jury selection process violated the equal protection clause of the Fourteenth Amendment; (3) the court erred when it engaged in improper ex parte communication with a juror; (4) the court erred when it failed to excuse a juror who was unable to be impartial; (5) his trial counsel provided ineffective assistance; and (6) his appellate counsel provided ineffective assistance. The postconviction court denied White's petition, concluding that White had already raised a majority of the claims in his direct appeal and that he failed to establish the facts alleged in the petition by a fair preponderance of the evidence. White now appeals all of the issues raised in his postconviction petition. The state declined to file a brief in response to White's postconviction appeal.

■ A defendant may seek postconviction relief "to vacate and set aside the judgment * * * or grant a new trial * * * or make other disposition as may be appropriate." Minn.Stat. § 590.01, subd. 1 (2004). "A petitioner seeking postconviction relief has the burden of establishing, by a fair preponderance of the evidence, facts which warrant a reopening of the case." *Mckenzie v. State,* 687 N.W.2d 902, 905 (Minn.2004) (quoting *State v. Rainer,* 502 N.W.2d 784, 787 (Minn.1993)). Review of a postconviction proceeding is limited to determining whether there is sufficient evidence to sustain the postconviction court's findings, and a postconviction court's decision will not be disturbed absent an abuse of discretion. *Zenanko v. State,* 587 N.W.2d 642, 644 (Minn.1998).

■ Once a direct appeal has been taken, all claims that were raised in the direct appeal and all claims that were known or should have been known but were not raised will not be considered upon a subsequent petition for postconviction relief. *See Hanley v. State,* 534 N.W.2d 277, 279 (Minn.1995); *State v. Knaffla,* 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976) ("*Knaffla* rule"). There are two exceptions to the *Knaffla* rule: (1) if a novel legal issue is presented, or (2) if the interests of justice require review. *Taylor v. State,* 691 N.W.2d 78, 79 (Minn. 2005) (citing *Ives v. State,* 655 N.W.2d 633, 636 (Minn.2003)). The second exception may be applied if fairness requires it and the petitioner did not "deliberately and inexcusably" fail to raise the issue on direct appeal. *Taylor,* 691 N.W.2d at 79 (quoting *Fox v. State,* 474 N.W.2d 821, 825 (Minn.1991)).

■ We have previously rejected, in a somewhat different form, White's first claim that the district court erred in admitting uncorroborated accomplice testimony. In essence, this claim is a recharacterization of White's previously rejected claims that (1) Minnesota's accomplice liability statute, Minn.Stat. § 609.05, and the jury instructions based on it, impermissibly and unconstitutionally alleviated the state's burden of proving the elements of the charged crime, and (2) the evidence was insufficient to support his convictions. *White,* 684 N.W.2d at 508–09. Because this claim has already been raised and addressed, we conclude that the postconviction court did not abuse its discretion when it denied White relief on this claim. *See Black v. State,* 560 N.W.2d 83, 86 (Minn.1997). Furthermore, we conclude that White's claims of racial discrimination in the selection of the grand jury, improper ex parte communication between the judge and a juror, and failure to excuse a juror who was unable to be impartial are also barred by the *Knaffla* rule because White knew or should have known of these claims at the time of his direct appeal.

 Five of White's eight ineffective assistance of trial counsel claims are also *Knaffla*-barred. We have held that an ineffective assistance of trial counsel claim is generally *Knaffla*-barred in a postconviction petition if the claim can be decided on the basis of the trial record and the briefs. *Carney v. State*, 692 N.W.2d 888, 891 (Minn.2005). "A claim of ineffective assistance of trial counsel that can be decided on the basis of the trial court record must be brought on direct appeal and is procedurally barred when raised in a postconviction petition." *Id.* (quoting *Torres v. State*, 688 N.W.2d 569, 572 (Minn.2004)). White argues that his trial counsel was ineffective because counsel failed to (1) object to or move for a mistrial based on the district court's communication with juror number four, (2) move for a mistrial based on a witness's admission at trial that the witness was not fully truthful when he testified before the grand jury, (3) object to uncorroborated accomplice testimony, (4) object to the jury instruction on accomplice liability, and (5) that trial counsel "admitted [White's] guilt during closing argument without [White's] permission." All of these claims can be decided on the basis of the district court record and are therefore *Knaffla*-barred on this postconviction review. *See Carney*, 692 N.W.2d at 891.

 Even if we were to address the five foregoing ineffective assistance of counsel claims, White would not prevail because the claims lack merit. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his attorney's performance "fell below an objective standard of reasonableness and that he [or she] was prejudiced as a result." *Sessions v. State*, 666 N.W.2d 718, 722 (Minn.2003) (quoting *Ives*, 655 N.W.2d at 637). To allow counsel "flexibility to represent a client to the fullest extent possible," our review of trial counsel's performance does not include reviewing attacks on trial strategy. *Opsahl v. State*, 677 N.W.2d 414, 421 (Minn.2004) (quoting *State v. Jones*, 392 N.W.2d 224, 236 (Minn.1986)). We have previously rejected ineffective assistance of counsel claims where counsel failed to move for a mistrial or object to alleged errors at trial because these actions are trial strategy decisions. *State v. Vick*, 632 N.W.2d 676, 689 (Minn.2001); *State ex rel. Black v. Tahash*, 280 Minn. 155, 158, 158 N.W.2d 504, 506 (1968).

 White asserts that his trial counsel was ineffective because counsel conceded in closing argument that White was a "robber" and a "drug dealer." This assertion is not supported by the record. White's counsel did note that the *state's theory* was that White and an accomplice in this murder committed robberies together. Counsel also appears to have conceded that White was a drug dealer when counsel stated that White and the murder victim were "slinging a little dope." Here it is important to note that White was not on trial for a drug offense and that counsel's admission appears to be the result of a trial strategy of admitting obvious facts while continuing to challenge the key elements of the charged offenses.

Furthermore, we conclude that the postconviction court did not abuse its discretion when it declined to apply the two *Knaffla* rule exceptions to White's claims. White does not argue that either *Knaffla* exception applies to his claims of improper ex parte communication between the judge and a juror, failure to excuse a juror who was unable to be impartial, or his ineffective assistance of trial counsel claims, nor does he argue that his claim of racial discrimination in the grand jury selection process is novel.

White's assertion that he made reasonable—yet unsuccessful—efforts to gather data to raise his racial discrimination claim

on direct appeal can be construed as an argument that the interests of justice require review of this claim. We have previously held that an alleged error in the composition of the grand jury is not properly and timely raised on direct appeal absent an objection to the indictment to the district court. *State v. Whittaker*, 568 N.W.2d 440, 448 (Minn.1997) (holding that due process claim based on grand jurors' acquaintance with the murder victim and/or a grand jury witness was improperly and untimely raised on direct appeal) (citing Minn. R.Crim. P. 10.03, 10.04, 17.06). Before his trial, White moved to dismiss count one of the indictment based on lack of probable cause. In this motion, White did not raise any issue relating to the grand jury selection process. Because White did not raise to the district court the issue of racial discrimination in the grand jury selection process, we conclude that White's efforts *after trial* to gather data to support this claim do not require us to address the claim on postconviction appeal in the interests of justice.

We next address White's claims that he received ineffective assistance of trial counsel when his trial counsel failed to challenge the grand jury indictment on the basis of racial discrimination in the grand jury, call a witness favorable to the defense, and request a *Schwartz* hearing regarding the jury foreperson. Our review of the record leads us to the conclusion that these claims are not *Knaffla*-barred because they cannot be decided solely based on the district court record. *See Carney*, 692 N.W.2d at 891. Additionally, White's claim of ineffective assistance of *appellate* counsel is not *Knaffla*-barred. Therefore, we will address the merits of these claims.

■ White claims that his trial counsel was ineffective when counsel failed to challenge the grand jury indictment on the basis of racial discrimination in the selection of the grand jury. Minn. R.Crim. P. 18.01, subd. 2, provides:

In St. Louis County a grand jury list shall be selected at random from a fair cross-section of the residents of each of the 3 districts of the St. Louis County Court district as defined by Minn.Stat. § 487.01, subd. 5(1) who are qualified by law to serve as jurors. The grand jury list shall otherwise be selected and the grand jurors shall be drawn from the list as provided by law.

Saint Louis County grand juries are selected by geographic district from a list which contains the names of residents who are registered to vote, licensed to drive, and/or who hold a Minnesota state identification card. We have previously held that a grand jury selection process that selects jurors from lists of registered voters, driver's licenses, and registered Minnesota identification card holders is constitutional. *Hennepin County v. Perry*, 561 N.W.2d at 895–96; *State v. Roan*, 532 N.W.2d 563, 569 (Minn.1995). Because it appears that the grand jury that indicted White was selected in conformance with established law, we conclude that White has not established that his trial counsel's performance "fell below an objective standard of reasonableness" due to his counsel's failure to challenge the indictment on this basis. *Sessions*, 666 N.W.2d at 722.

■ As stated previously, our review of trial counsel's performance does not include reviewing trial strategy. *Opsahl*, 677 N.W.2d at 421. Trial strategy includes decisions about what evidence to present to the jury. *State v. Miller*, 666 N.W.2d 703, 716 (Minn.2003). Specifically, this court has held that "[w]hich witnesses to call at trial and what information to present to the jury are questions that lie within the proper discretion of the trial counsel." *Jones*, 392 N.W.2d at 236. When

viewed in this light, we conclude that White's claim that his trial counsel was ineffective for failure to call a particular witness who might have contradicted the testimony of a state's witness is without merit.

■ White's claim that his trial counsel should have requested a *Schwartz* hearing regarding the jury foreperson is similarly without merit. White claims that the jury foreperson was unable to be impartial because (1) the prosecutor in this case previously prosecuted the men charged with the murder of the foreperson's brother, and (2) the foreperson had a working relationship with the roommate of one of the victims. Voir dire of the foreperson comprised 55 pages of transcript, including extensive questioning regarding the prosecution of her brother's murderers. Because of the extensive voir dire regarding the prosecutor's previous prosecution of the men charged with the foreperson's brother's murder, White knew or should have known of this claim at the time of his direct appeal. Moreover, we find nothing in the foreperson's answers to extensive questioning about the prosecution of her brother's murderers that indicates that she would be unable to be impartial in this case. The foreperson stated that she never communicated with the prosecutor during the previous prosecution, and she did not appear to have any predisposed views toward White's case based on her experience with her brother's murder.

Voir dire of the foreperson also addressed her place of employment, whether she knew any of the people on a list provided to her (presumably potential witnesses), and whether she had any previous knowledge "about this case." There was no specific discussion during voir dire of any working relationship between the foreperson and the victim's roommate, but the foreperson apparently indicated that she did not know anyone on the list. The victim's roommate's name was on the witness list filed with the court on December 27, 2002, but it is unclear if this same list was shown to the foreperson on January 9, 2003. White acknowledges that the victim's roommate was not a witness to the shootings, that investigators concluded that she "was not involved in the incident," and that she was not called to testify at trial.

White asserts that the victim's roommate was a blackjack dealer at a casino where the foreperson was employed as a supervisor. White bases this claim on a statement allegedly made by the victim's roommate to an investigator with the Duluth Police Department, in which the victim's roommate said she was at work at the casino at the time of the shooting. We can find no statement or report mentioning such a statement in the district court record, and White did not attach any such statement or report to his petition. If the victim's roommate was in fact employed at the casino and the foreperson knew her, it is possible that the foreperson had previous knowledge about the case that prevented her from being impartial. Nevertheless, because White failed to provide evidence to support his claim that the foreperson was unable to be impartial, we cannot conclude that White's trial counsel was ineffective for failing to request a *Schwartz* hearing.

■ White's claim that he received ineffective assistance of appellate counsel when appellate counsel failed to raise racial discrimination in the grand jury selection process is also without merit. We have held that an alleged error in the composition of the grand jury is not properly and timely raised on direct appeal absent an objection to the indictment to the district court. *Whittaker*, 568 N.W.2d at 448. In light of this rule, we conclude

that White's claim that his appellate counsel's performance "fell below an objective standard of reasonableness," *Sessions*, 666 N.W.2d at 722, by failing to challenge the grand jury indictment for the first time on appeal lacks merit.

Finally, we address White's claim that he received ineffective assistance of appellate counsel when counsel failed to challenge "uncorroborated accomplice testimony." As previously noted, White's argument about uncorroborated accomplice testimony is merely a recharacterization of his claims that we rejected on direct appeal that the accomplice liability statute and accompanying jury instructions are unconstitutional and the evidence was insufficient to sustain a conviction. *See White*, 684 N.W.2d at 508–10 (concluding that the jury instructions on accomplice liability did not confuse or mislead the jury or materially misstate the law, and evidence was sufficient to support White's convictions). In essence, appellate counsel *did* raise this claim, and therefore White's claim is without merit.

Affirmed.